## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**APRIL MALICK,** and **ROB MALICK,**
Individually and as Next Friend for
**C.M.,** a minor child,

      Plaintiffs,

vs.

**CROSWELL-LEXINGTON DISTRICT
SCHOOLS** and the **CROSWELL-LEXINGTON
BOARD OF EDUCATION,**
**DAN GILBERTSON,** *in his individual and official capacity*,
and **KYLE WOOD,** *in his individual and official capacity*.

      Defendants.

Case No: 22-cv
Hon.
Mag.

---

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Molly Savage (P84472)
Attorneys for Plaintiffs
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
msavage@deborahgordonlaw.com

---

### COMPLAINT AND DEMAND FOR JURY TRIAL

      Now comes Plaintiffs, April Malick and Rob Malick, Individually and as Next

of Friend for C.M. a minor child, complaining against the Defendants, Croswell-

Lexington District Schools, Croswell- Lexington Board of Education, Kyle Wood, and Dan Gilbertson, in their official and individual capacities, with respect to the conduct of the school district as described below.

## I.     Jurisdiction Is Proper

1.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States. This Court has supplemental jurisdiction over Plaintiffs' related state law claims under 29 U.S.C. § 1367(a) because those claims arise out of the same case or controversy as Plaintiffs' federal claims.

2.     The Plaintiffs reside in the County of Sanilac, Michigan.

3.     Defendants Croswell-Lexington Board of Education and Croswell-Lexington District Schools ("Cros-Lex") reside in the town of Croswell and the County of Sanilac, Michigan.

4.     Cros-Lex School District and Cros-Lex Board of Education are the recipient of federal funds as that term is defined under Title VI.

5.      Defendant Kyle Wood, at all times material to this action, has served as the Principal of Cros-Lex High School.

6.     Defendant Dan Gilbertson, at all times material to this action, has served as the Superintendent of Schools for Cros-Lex.

## II.     Facts

### A.     Background

7.     C.M. is the adopted daughter of Rob and April Malick (the Malicks), she is minor child. She is Black; Rob and April are white.

8.     C.M. was one of three Black students in a student population of 2,053 in the Cros-Lex school district.

9.     C.M. has attended Cros-Lex schools since 2018 when she entered middle school.

10.     C.M. endured racial harassment and discrimination from other students, faculty and staff, since the time of her enrollment.

11.     As set forth below, in February 2022, C.M. was forced out of the district due to racial discrimination.

### B.     C.M. is Bullied and Harassed at Cros-Lex Because she is Black

12.     In September 2018, when C.M. was in sixth grade, she was physically assaulted by another student because she was Black. Rob and April Malick reported this to the School Board and Defendant Gilbertson.

13.     The Malicks also filed a police report as to the assault.

14.     During C.M.'s sixth grade (2018- 2019) and seventh grade (2019- 2020) school years, she was relentlessly bullied and harassed because she was Black, including

regularly called the n-word. Students also made fun of her "wig" and threatened to "rip her wig off."[1] The Malicks reported the harassment to the school.

15. The middle school principal told the Malicks she knew that C.M. was being racially bullied and could see the negative toll it took on her.

16. Based on the above, the Malicks felt they had no choice but to homeschool C.M. for her eighth-grade year.

17. The Malicks asked the school to remedy the harassment and discrimination, hoping to send her back to school for ninth grade at the High School.

18. The district took no action to train students or teachers on discrimination, harassment, and bullying, or otherwise remedy its discrimination problem.

19. On June 11, 2021, a student wore a large confederate flag as a cape to school (below). Rob reported this to Defendant Gilbertson:

> People asked me why we choose to homeschool our daughter C███ M████ this year. When kids are allowed to walk in with confederate flags, this is the biggest reason of them all. Just unbelievable...

Rob added that he had hoped to send C.M. back to school for ninth grade but "perhaps [Cros-Lex] wasn't the place."

---

[1] Race discrimination is inclusive of negative references to traits historically associated with race, including references to hair texture and appearance.

4



20.    The student who wore the flag was not disciplined.

21.    The Malicks decided to send C.M. back to school for in-person learning for ninth grade. The first day was August 31, 2021.

22.    A few days before the first day, the Malicks met with Defendant Wood to discuss what C.M. had been through in middle school—the harassment, threats, and name-calling, all based on her race— and listed the names of the students who most frequently bullied C.M.. They asked Defendant Wood to monitor the situation.

23.    Upon the start of the school year, Cros-Lex students immediately began bullying and harassing C.M. based on her race.

24.    Between September – October 2021, C.M. was often called the n-word and made fun of because she was Black.

25.     On October 4, Rob submitted to Gilbertson, via email, "Notes on bullying" he had complied, documenting what his daughter had experienced. He named eight students and listed multiple racist statements made to C.M., including:

- "Go back to the plantation and pick cotton"

- Being called the n-word

- "Your hair looks like shit"

- "I'm going to snatch your weave"

- I'm going to snatch your weave and burn it"

- "I bet your hair is dead"

26.     One student mocked the Black Lives Matter movement by kneeling and putting up his fist, starring at C.M., and laughing.

27.     Also on October 4, 2021, Rob sent an email to Defendant Gilbertson titled "BIG Racial Problems at the HS today":

Had a series of huge incidents today and the past week or so.  I need a meeting or something because this is ridiculous.  When a substitute teacher's son tells my daughter to go back to the plantation and pick some cotton is the day I have lost my right mind.  I have already emailed Mr Gilberston, as he was in the loop and in the know in the previous racial incidents.  I have a whole laundry list of notes that I want to send to you.  Thank you for your time.  I truly believe that we need a ZERO tolerance policy on racial bullying

28.     He received no response from Gilbertson.

29.     Receiving no response from administration, Rob contacted a few of C.M.'s teachers.

30.     On October 5 he wrote to one teacher, stating:

> Good morning,
> I hate to have to write this but C████ has been enduring a ton of racism in school so far this year. It is sometimes in your classroom ████████. She hears it in the halls always daily and sometimes hourly. I have instructed her that if she hears it, she will tell the student to stop and immediately find witnesses. Then she will get up out of her seat, notify you and probably walk down to the office. I've already contacted the principal, vp and superintendent. We've been going down this road for 3 years so now I am reaching out to the teachers. Thank you for your time and she truly enjoys your class

31.     The teacher responded, stating "I am sorry that this has been an ongoing problem for C.M.. . . . I hope we can bring this to an end in my class."

32.     Rob told another teacher that C.M. "felt like she was in the middle of a Klan rally" in her class.

33.     In response, the teacher told Rob that C.M. had received a detention for being on her phone during class. (C.M. was on her phone, texting with her father, because she was fearful for her safety. The Malicks informed the school of this. Upon the Malicks request, the school waived the detention.)

34.     As a result of the racist behavior, on October 5, 2021, Rob requested a meeting with Defendant Wood. Rob told Defendant Wood that C.M. was being bullied and harassed because of her race almost daily. He shared the examples listed above. Defendant Wood assured Rob the school would put a stop to the racial bullying.

35.     Also in October 2021, some students organized a group chat, via the "Snapchat" app, for their Civics class. The purpose of the chat was to discuss classwork. The chat often devolved from topics on Civics to banter. Racism in the

chat was common. One student remarked that former president Barack Obama was a "stupid n*****". The Malicks reported the comment to Defendant Gilbertson.

36.     On October 12, Rob emailed Kevin Watkins, the President of the Port Huron NAACP, notifying him of what was happening to C.M..

37.     On October 14, 2021, a student told another student to "snatch C.M.'s weave[2]" and began saying "she [C.M.] is wearing a weave" to the class.

38.     Rob reported the comments and the names of the students who made them in an email to Defendant Gilbertson. He received no response.

39.     On or around October 27, 2021, two students were mocking C.M. and using the n-word in Snapchat conversation. C.M. told them "STOP, it's…not funny" and explained the history behind the word. One student responded, "free speech, n***a".

40.     Rob sent a screenshot of the chat to Defendants Wood and Gilbertson. He never received a response.

41.     The racial harassment and bullying towards C.M. also included threats of violence.

42.     On October 27, 2021, one student told another student, who told C.M., "these n*****s are gonna get it." C.M. confronted the student who made the statement. Rob immediately reported this to Defendants Wood and Gilbertson, and the school

---

[2] A "weave" is an artificial or natural hair extension fixed into human hair, usually associated with Black hair.

counselor. Rob stated his "fear…that the racism and bullying is making her [C.M.] unravel…I would like to have a safe space for her at school."

43.     Rob received a response from the school counselor, only, who told Rob that C.M. was welcome to come "decompress" in her office anytime. Defendant Wood later told C.M. that she had "escalated" the situation by confronting the student who made the statement.

44.     On or around October 29, 2021, C.M. learned that the same student who made the above threat stated that "all the n******s will be shot after school today at 3:00 pm".

45.     The Malicks, distraught, immediately notified Defendant Wood in an email with the student's name and the subject line "urgent." Rob told Defendant Wood that he had "serious doubts" about the school's ability to protect C.M..

46.     The Malicks drove to the school to ensure their daughter's safety and to report the comment to Defendant Gilbertson. They also filed a police report.

47.     Defendant Gilbertson told the Malicks he did not believe the school could keep their daughter safe.

48.     As a result, in early November, C.M. began walking with two teachers from class to class for protection. The teachers who walked with C.M. varied based on availability.

49.     The teachers who walked with C.M. were, however, more harmful than helpful. They ordered C.M. around, told her to "shut up" and "sit down". C.M. felt

they were not protecting her and might also hold discriminatory animus towards her because of her race. The Malicks reported this to Defendant Gilbertson.

50.     Shortly thereafter, the Malicks learned that another teacher who was scheduled to start walking with C.M. for protection, made racist comments about her, stating that C.M. was "playing the race card", which "is what blacks do", and that she "deserved" to be treated that way because C.M. herself was "no saint".

51.     On November 8, 2021, the Malicks reported the counselor's comments in an email to Defendants Gilbertson and Woods and requested a meeting.

52.     In the same email, Rob told Defendants he had learned that a school counselor was skipping over the "diversity and inclusion" lesson during teacher training sessions, noting that "maybe the problem" of racism at the school was "much deeper than we suspected."

53.     Other teachers made negative racial comments. The Civics teacher told his class that Black Lives Matter was a "terrorist organization."[3]

54.     Another teacher told C.M. that "not all racists are bad people."

---

[3] This teacher had other complaints from students and parents, including repeatedly calling a Hispanic student "Jose", when that was not his name, consistently mispronouncing an Asian student's name despite having been corrected many times, and speaking to her slowly as though she could not understand English, and telling female students in the class who believed in feminism that they should be in the kitchen.

55.     In November 2021, Rob again requested a meeting with Defendants Gilbertson and Wood. He reported the teachers' comments and told Defendants that C.M.'s situation was not improving.

56.     On November 12, 2021, the Malicks filed a complaint with the Michigan Department of Civil Rights (MDCR), alleging that C.M. was facing racial discrimination and a hostile environment at the school from both the teachers and students, stating:

> Most recently on November 8, 2021, my daughter was subjected to a hostile environment by some Caucasian students and two Caucasian employees. She was constantly subjected to comments and remarks that were racially stereotypical and called a disparaging name. Students would wear shirts with the confederate flag and make derogatory remarks towards my daughter. She was also threatened with bodily harm and death threats. I complained on several occasions, most recently on November 10, 2021, but no remedial solution was reached. I believe my daughter's race and engaging in protected activity were factors in the hostile environment.

57.     The school was made aware of the complaint and hired an attorney. The school did not take any action to end the racial harassment and bullying directed at C.M..

58.     On November 15, 2021, Rob, April, and C.M., along with other families effected by Cros-Lex's pervasive prejudicial environment, attended a Board Meeting. The Malicks also invited Kevin Watkins.

59.     During the Board meeting, the Malicks, other families, and Mr. Watkins reported a long list of difficulties that Black students face at Cros-Lex, citing specific examples, such as jokes about George Floyd and the holocaust, mocking BLM, name-

calling including the n-word, references to going back to the planation, and physical threats.

60.     Mr. Watkins told the School Board there is "racism…here, in Croswell Lexington…this is racism." He stated, "you allow students to walk in here [the school] draped like superman with the confederate flag…which stands for hate…where are the teachers? Where are the administrators?"

61.     He also noted that racism coming from staff and administrators themselves.  He urged the school to implement training for students and teachers, which the school had not done in the past.

62.     One Black student discussed her experience with racism and noted she continues to have problems with the "same students, same families".

63.     During the meeting, the Board passed a Resolution to "reaffirm the commitment" to its existing anti-discrimination policy. The policy was roughly two paragraphs long and used pro-forma language. It was ineffective.

64.     Unfortunately, the Board's "recommitment" to adhering to its existing policy was not honored.

65.     The school provided no training on the policy, or any training on anti-discrimination and harassment, to teachers and students.

66.     Students continued to be given broad latitude to say what they pleased with no repercussions.

67.     On November 16, 2021, the day after the Board meeting, Rob sent an email to Defendant Gilbertson asking about a student who wore a tree shirt to school referring to President Joe Biden as "FJB" [F---Joe Biden]:

> Just trying to figure out where the line is drawn.  So a student can wear an FJB shirt to school?  I was just wondering what happens if a student wears an F Trump shirt or F the catholic church or ?  I'm just wondering where the line is.  If it's accepted, no worries.  I was just curious as to the reaction a student would receive in Civics if the ideology didn't mesh with the agenda.  I enclosed it because he was in said class

68.     On November 19, 2021, a male student told C.M. "I hate all you Black bitches." Rob reported this to Defendants Gilbertson and Wood.

69.     Nevertheless, the school allowed the student to remain in school. He continued to target C.M., at one point threatening to aim scissors with slingshots at her head. He also had a knife from the cafeteria and stated he was going to cut C.M..

70.     The Malicks reported this to the school and filed a police report. As a result, the school and the police investigated C.M. for wrongdoing.

71.     Despite the Malicks making roughly twenty complaints to Defendants about a racially hostile environment between June 2021- December 2021, including multiple in person meetings at the school, no change occurred.

72.     Defendants' actions or inactions were clearly unreasonable in light of the known circumstances that C.M. faced at school.

73.     Defendants have been deliberately indifferent to the complaints, words, and actions of students directed against C.M.. At times, unbelievably, C.M. herself was blamed for "bating" teachers and students or "instigating" racist conduct.

74.     As a result of the foregoing, in January 2022, C.M. experienced an episode of extreme mental and emotional distress, as per her doctor. During the episode, she told her parents that because of being harassed and bullied at school, she "wished she was white." She told them she could no longer endure attending Cros-Lex. Her doctor later diagnosed C.M. with Post Traumatic Stress Disorder.

### C.     C.M. is Forced out of the District Because of Racial Bullying

75.     Left with no other option from the school, on February 11, the Malicks informed the school that C.M. would not be reentering the building. She began attended classes virtually, from home.

76.     Based on the foregoing actions and in-actions, C.M. was forced to leave the school to preserve her physical and mental health.

77.     Defendants' actions and in-actions deprived C.M. of her property interest in her education.

78.     Because of the harassment and Defendants' deliberate indifference to the same, C.M.'s grades suffered, her mental health declined, and she was treated by a physician for anxiety, depression, and PTSD.

79.     She sees a therapist regularly and is prescribed medication, which she takes daily. Her medical conditions are the product of being repeatedly harassed and threatened at school because of her race, and the school's failure to take reasonable steps to stop the harassment.

80. Defendants' deliberate indifference to the racial harassment and bullying caused Rob and April Malick to experience extreme emotional and mental distress. Rob and April were also deprived of their right to control their daughter's education.

### Count I
### Discrimination/ Hostile Environment in Violation of Title VI of the Civil Rights Act of 1964
*(as to Defendants Croswell Lexington School District and the Croswell Lexington Board of Education)*

81. Plaintiffs incorporate all preceding paragraphs as though they were fully set forth herein.

82. Title VI prohibits a recipient of federal funds from discriminating on the basis of race, color, or national origin. *See* 42 U.S.C. § 2000d. Public educational institutions that receive federal funds are subject to this mandate. 34 C.F.R. § 100.13(i) (2000) (defining "recipient" to include any public "agency, institution, or organization, or other entity ... in any State, to whom Federal financial assistance is extended"); *see also id.* § 100.13(g)(2)(ii).

83. C.M. is a Black female.

84. Cros-Lex is the recipient of federal funds as that term is defined under Title VI.

85. C.M., as a Cros-Lex student, was the intended beneficiary of and participant in a program receiving federal funding.

86. C.M. was the subject of intentional discrimination based on her race.

87.     Cros-Lex had actual notice of the discrimination and refused, or otherwise failed, to remedy the discriminatory conduct. Their conduct amounted to deliberate indifference.

88.     The school maintained a policy of deliberate indifference to reports of bullying and harassment based on race.

89.     This indifference was the cause of plaintiffs' injuries.

### Count II
### Discrimination/ Hostile Environment Based on the Elliot Larsen Civil Rights Act (ELCRA) Mich. Comp. Laws Ann. § 37.2102 et seq.
*(as to all Defendants)*

90.     Plaintiffs incorporate all preceding paragraphs as though they were fully set forth herein.

91.     Under the ELCRA, C.M. has a right to the full and equal utilization of educational facilities without discrimination because of race.

92.     Per § 37.2402, an educational institution shall not discriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of race, or exclude, expel, limit, or otherwise discriminate against an individual enrolled as a student in the terms, conditions, or privileges of the institution, because of race.

93.     C.M. was subjected to unwelcome harassment based on her race.

94.     The harassment had the purpose or effect of substantially interfering with C.M.'s education or creating an intimidating, hostile, or offensive educational

environment, and ultimately of excluding her from the full utilization of the benefit of the institution.

95.    Defendants are responsible for the discrimination/ hostile environment.

### Count III
### Violation of Section 42 USC §1983
### Equal Protection Clause
*(as to all Defendants)*

96.    Plaintiffs incorporate all preceding paragraphs as though they were fully set forth herein.

97.    Defendants, acting under color of state law, deprived Plaintiffs of the rights, privileges, or immunities secured by the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, in that Defendants, without justification, have intentionally discriminated against C.M. on the basis of her race.

98.    Defendants had actual and/or constructive knowledge that bullying, harassment and discrimination based on race was so severe, pervasive, and objectively offensive that it created a hostile environment that deprived C.M. of access to educational programs, activities, and opportunities.

99.    The practices, policies, or customs of Defendants and their policymakers for responding to such bullying, discrimination and harassment based on race were so clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that each of the Defendants named in this claim intended for the bullying, discrimination and harassment to occur or were deliberately indifferent to it.

100.    Defendants also failed to adequately train and/or negligently trained School District staff about policies prohibiting bullying, harassment and discrimination on the basis of race.

101.    As a result of the harassment, C.M. was deprived of an equal opportunity to receive an education.

### Count IV
### Violation of Section 42 USC §1983
### Denial of Substantive Due Process
*(as to all Defendants)*

102.    Plaintiffs incorporate all preceding paragraphs as though they were fully set forth herein.

103.    The actions of all Defendants constitute a violation of Plaintiffs' constitutional rights under the Substantive Due Process Clause of the Fourteenth Amendment.

104.    These rights include C.M.'s right to education, familial relationship, and freedom from government actions that shock the conscience, as well as the right of April and Rob to the familial relationship of their child, including the right to control her education.

105.    Defendants had actual knowledge that the bullying, harassment, assault and discrimination C.M. suffered because of her race was so severe that it deprived C.M. of the rights, privileges, or immunities secured by the Substantive Due Process Clause of the Fourteenth Amendment.

106.    Defendants' actions and omissions, in failing to intervene on behalf of C.M., were violative of C.M.'s substantive due process rights and those of Rob and April.

107.    The practices, policies, or customs of Defendants for responding to such bullying, harassment, assault, and discrimination were so clearly unreasonable in light of known circumstances as to give rise to a reasonable inference that each of the Defendants intended for these events to occur or were deliberately and callously indifferent to their occurrence.

108.    Defendants' actions and omissions reflect their custom of tolerance or acquiescence of a widespread policy, practice or custom of failing to adequately respond to bullying, harassment, and assault based on race, as well as a policy of inadequate training or supervision, so as to safeguard the constitutionally protected rights of Plaintiffs.

109.    As a result of Defendants' conduct, Plaintiffs have been damaged, including without limitation emotional pain and suffering.

WHEREFORE, Plaintiffs request judgment against defendants as follows:

**A.    LEGAL RELIEF**

1.    Compensatory, economic, and noneconomic damages in whatever amount Plaintiffs are found to be entitled;

2.    Exemplary damages in whatever amount Plaintiffs are found to be entitled;

3.    Punitive damages in whatever amount Plaintiffs are found to be

entitled;

4.    Liquidated damages in whatever amount Plaintiffs are found to be entitled; and

5.    An award of interest, costs and reasonable attorney fees.

## B.    EQUITABLE RELIEF

1.    An order from this Court placing Plaintiffs in the position they would have been in had there been no wrongdoing by Defendants,

2.    An injunction out of this Court prohibiting any further acts of wrongdoing;

3.    An award of interest, costs and reasonable attorney fees; and

4.    Whatever other equitable relief appears appropriate at the time of final judgment.


Dated:  May 23, 2022        **DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Sarah Gordon Thomas (P83935)
Elizabeth Marzotto Taylor (P82061)
Molly Savage (P84472)
Attorneys for Plaintiffs
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
msavage@deborahgordonlaw.com

## <u>JURY DEMAND</u>

Plaintiffs April Malick and Rob Malick, Individually and as Next of Friend for C.M., a minor child, through **Deborah Gordon Law,** demands a trial by jury of all the issues in this cause.

Dated:  May 23, 2022              **DEBORAH GORDON LAW**
<u>/s/Deborah L. Gordon (P27058)</u>
Sarah Gordon Thomas (P83935)
Elizabeth Marzotto Taylor (P82061)
Molly Savage (P84472)
Attorneys for Plaintiffs
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
msavage@deborahgordonlaw.com